UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKHAIL LYASKO,<br>Plaintiff,<br>v.<br>EVGENY ALEKSANDROVICH CHERNYSHEV,<br>Defendant. | Case No. 25-cv-09756-RFL<br>**ORDER GRANTING MOTION TO DISMISS WITHOUT LEAVE TO AMEND**<br>Re: Dkt. No. 35 |

Lyasko's claims were previously dismissed with leave to amend because they were time-barred by a three-year statute of limitations under California law. (*See* Dkt. No. 30 (the "Prior Order").) In his amended complaint, Lyasko brings the same claims as before, but he now asserts those claims under Russian law. Chernyshev moves to dismiss, arguing, among other things, that Lyasko's claims are barred by the applicable statutes of limitations. For the reasons set forth below, the motion is **GRANTED WITHOUT LEAVE TO AMEND**. This Order assumes that the reader is familiar with the facts of the case, the applicable legal standards, and the parties' arguments.[1]

The parties offer competing expert declarations on Russian law. The longest potentially applicable statute of limitations proposed by Lyasko is, as before, three years. Chernyshev argues that the limitations period began when Lyasko "learned or should have learned about the circumstances that are the basis" of his claims. (*See* Dkt. No. 35 at 10-11, 17.) Lyasko does not dispute that this is the appropriate standard for determining when the statute of limitations started

[1] All citations to page numbers in filings on the docket refer to ECF page numbers.

to run, and his expert agrees that it is. (*See* Dkt. Nos. 39 at 5 (claims governed by three-year statute of limitations under Article 196 of the Civil Code of the Russian Federation), 39-1 ¶ 25 (under Article 200, for three-year statute of limitations under Article 196, "the statute of limitations begins to run from the date on which the person learned or should have learned of the violation of their right and of who is the proper defendant in the action to protect that right").)

The claims are time-barred under Russian law. The limitations period began at the latest in August 2022, at which point Lyasko had already learned or should have learned of Chernyshev's alleged fraud. As explained in the Prior Order, "Lyasko asserted [in Russian court] that Sberbank could not collect from him under the at-issue guarantees because those guarantees were void based on Chernyshev's fraud. In those proceedings, the Russian court issued a decision in August 2022," so Lyasko learned or should have learned of the fraud, and his claim accordingly accrued, by August 2022 at the latest. (*See* Prior Order at 1-2.) At best, a three-year statute of limitations applies. It therefore expired in August 2025, three years after the August 2022 accrual date, which predates the September 2025 commencement of this action in state court.

It does not matter that "the evidence underlying the fraud was not uncovered until 2023." (Dkt. No. 39 at 10.) Even if Lyasko found additional evidence in 2023, the claims accrued when Lyasko learned or should have learned of a legal violation, and by August 2022, he had already taken the position that the guarantees at issue should be voided based on Chernyshev's alleged fraud.

It also does not matter that "the damages were incurred by [Lyasko] only in 2025, when he was forced to incur major financial losses and penalties in his own bankruptcy." (*Id.* at 7.) Even before he suffered losses and penalties, he learned of the "violation of [his] right" not to be defrauded by August 2022 at the latest. (Dkt. No. 39-1 ¶ 25.) Lyasko's expert suggests that his cause of action nonetheless accrued in 2025 based on Article 15 of the Civil Code of the Russian Federation, which his expert characterizes as requiring Lyasko to "substantiate the amount of damages" before the statute of limitations begins to run. (*See id.* ¶¶ 39-40, 48.) That provision,

however, is silent as to the running of a statute of limitations. It provides only that "[t]he person, whose right has been violated, shall be entitled to demand the full recovery of the losses inflicted upon him," and then goes on to describe the methods of calculating those losses. (*See* Dkt. No. 36 at 47.) If anything, that provision suggests that a person may have had their right "violated" prior to completing a final accounting of the pertinent losses.

Moreover, even if claim accrual depended on the existence of a loss, Lyasko's expert explains that "[t]he debtor's fault in breaching [an] obligation is presumed until proven otherwise." (Dkt. No. 39-1 ¶ 47.) Under that rule, Lyasko had already suffered losses at the time Sberbank sought to collect from him under the guarantees because he was immediately presumed at fault for the failure to pay. (*See also* Prior Order at 2-3 ("Lyasko first suffered an injury as a result of the alleged fraud no later than when Sberbank first attempted to collect from him as a guarantor, which occurred prior to August 2022, and not later when the Russian bankruptcy court actually charged him for AAE's debts.").)

Lyasko argues that under Article 10 of the Civil Code of the Russian Federation, the Court should decline to apply the statute of limitations in an exercise of equity. (*See* Dkt. No. 39 at 6.) As explained by his expert:

> [I]t is permissible to refuse to apply the statute of limitations as a sanction for abuse of rights (Article 10(2) of the Civil Code of the Russian Federation), taking into account the lack of a realistic possibility for the interested party to bring the matter before a court. That is, a sanction such as the refusal to apply the statute of limitations should be used *when it is established that, as a result of such a person's bad-faith actions, it has become impossible or difficult to timely apply to the court to protect one's rights*.

(Dkt. No. 39-1 ¶ 27 (emphasis added).) Lyasko, however, offers no explanation as to why any purportedly bad-faith actions by Chernyshev made it "impossible or difficult" for him to timely commence this action. Allegations that Chernyshev lied to Lyasko in early 2022 such that he did not discover evidence of the alleged fraud until 2023 do not alter this conclusion. (*See* Dkt. No. 31 ¶ 46.) As explained above, Lyasko was arguing in Russian court by no later than August 2022 that he had been defrauded, and Chernyshev's alleged lies and the failure to uncover

evidence of the fraud before 2023 did not prevent Lyasko from doing so.

Lyasko also argues that Article 213.25 of Federal Law No. 127-FZ ("On Insolvency (Bankruptcy)") permits a court to "reinstate[]" a lapsed statute of limitations where pending bankruptcy proceedings prevented a plaintiff from commencing an action sooner. (*See* Dkt. No. 39 at 14.) As explained by his expert, Article 213.25 concerns the capacity of an administrator to bring claims on behalf of an individual: "[D]uring the sale of a citizen's property on the citizen's behalf [during bankruptcy proceedings], the financial administrator conducts court proceedings concerning the citizen's property rights, including claims for the recovery or transfer of the citizen's property or in favor of the citizen, and the collection of debts owed to the citizen by third parties." (Dkt. No. 39-1 ¶ 5.) She pairs this provision with Article 205 of Part One of the Civil Code of the Russian Federation, which permits "restoration" of a lapsed statute of limitations upon "consideration of a claim by a citizen-plaintiff for recognition of a valid reason for missing the statute of limitations." (*See id.* ¶ 4.) Thus, according to Lyasko and his expert, the administrator's capacity to bring Lyasko's fraud claim under Article 213.25 during the pendency of Lyasko's bankruptcy proceedings justifies a "restoration" of the statute of limitations. Yet the *administrator's* capacity to sue does not implicate *Lyasko's* capacity to sue. As such, Article 213.25, as described by Lyasko's expert, does not suffice to establish that Lyasko was precluded from himself pursuing a claim during bankruptcy. And, even if Lyasko himself were precluded from bringing such a claim, Lyasko does not explain why he did not or could not request that the administrator bring his claims against Chernyshev. Chernyshev's expert makes this exact point in connection with Chernyshev's opening brief:

> The arguments asserting that Lyasko was unable to file such a claim earlier on the grounds that bankruptcy proceedings had been initiated against him are not grounded in law. Lyasko's own bankruptcy did not preclude him from filing such a claim himself or from demanding that his insolvency administrator file such a claim on his behalf.

(Dkt. No. 36 at 36 ¶ 20.) Neither Lyasko nor his expert addresses this point.

Finally, Lyasko argues that estoppel permits tolling the statute of limitations. (*See* Dkt.

No. 39 at 15 (citing Dkt. No. 39-1 ¶¶ 30-34).) The cited portions of his expert's declaration, however, do not support that conclusion. As explained by his expert:

> [E]stoppel . . . deprive[s] [a party] of the right to raise objections regarding previously committed acts and transactions, and decisions made, if their conduct indicated their validity. The main purpose of the estoppel principle is to prevent a party from gaining an advantage at the expense of another party—who has in good faith relied on a specific legal situation created by the first party—as a result of inconsistency in its conduct. The estoppel principle can be defined as a prohibition on relying on circumstances that were previously acknowledged by a party as indisputable based on its actions or representations.

(Dkt. No. 39-1 ¶¶ 31-32 (quotation marks omitted).) Neither Lyasko nor his expert explain how his failure to file a lawsuit sooner constitutes an advantage gained at Lyasko's expense *based on a legal situation created by Chernyshev's conduct*. (*See also* Prior Order at 3 ("[N]othing in the Complaint suggests . . . that Chernyshev engaged in deceptive conduct that caused [Lyasko's] claim[s] to grow stale." (citation and quotation marks omitted).) To the extent Lyasko alleges that "Chernyshev lied to" him such that he did not uncover "evidence underlying the fraud" until 2023 (Dkt. No. 31 ¶ 46), or that Chernyshev "ignored court orders" and "refused to provide [relevant] information" (*see id.* ¶¶ 2, 44), that is not a legal situation created by Chernyshev that prevented Lyasko from bringing his claims. Again, there is a distinction between whether Lyasko could have brought a claim and whether he had obtained additional evidence supporting it.

In sum, Lyasko's claims are time-barred, so the motion to dismiss is granted. Dismissal is with prejudice and without leave to amend because Lyasko's claims are dismissed for essentially the same reasons they were dismissed in the Prior Order. Thus, it does not appear that he will be able to cure the identified deficiency through additional amendment, so further leave to amend would be futile. *See, e.g.*, *Jones v. City of Oakland*, No. 26-cv-00336-RFL, 2026 WL 1862110, at *2 (N.D. Cal. June 29, 2026). Lyasko's request for "an evidentiary hearing to enable the parties to cross-examine the Russian law experts as to their conflicting opinions" is **DENIED**. (*See* Dkt. No. 39 at 19.) To the extent that the parties' experts disagreed, they

disclosed the bases for their opinions in their declarations and provided translated copies of the pertinent provisions of Russian law. Accordingly, no further hearing is necessary to determine the foreign law at issue, which presents a legal question rather than a factual one. *See G&G Prods. LLC v. Rusic*, 902 F.3d 940, 948 (9th Cir. 2018); *see also Radu v. Shon*, 62 F.4th 1165, 1174 (9th Cir. 2023) ("[A] district court's selection of methods to evaluate foreign law is discretionary." (citation omitted)).

**IT IS SO ORDERED.**

Dated: July 15, 2026

RITA F. LIN
United States District Judge